# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| MICHAEL POLIDORO and | : | CIVIL ACTION |
| GABRIELLA POLIDORO, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | No. 17-4345 |
| v. | : | |
| | : | |
| WESTFIELD INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM</u>

**ROBERT F. KELLY, Sr. J.**                                            **JUNE  26, 2018**

  Plaintiffs Michael Polidoro ("Polidoro") and Gabriella Polidoro (collectively, "the Polidoros") initiated this action against Defendant Westfield Insurance Company ("Westfield") to recover underinsured motorist benefits ("UIM") stemming from a May 2012 automobile accident involving Polidoro.  Westfield has filed a Motion for Partial Summary Judgment, seeking dismissal of Polidoro's claim for past and future wage loss on the basis that the lost wages were caused by a separate worked-related incident occurring over three years after the automobile accident.  The Polidoros have filed a Response in Opposition, and Westfield has filed a Reply Brief.  For the reasons noted below, Westfield's Motion is denied.

## I. BACKGROUND

  On May 29, 2012, Polidoro was a passenger in a "commercial box truck" that his employer, Custom Aire, Inc., owned.  (Pl.'s Resp. Opp'n to Def.'s Mot. Partial Summ. J. 4.[1])  While he was stopped in traffic on I-95, a van rear-ended the truck.  (*Id.* at 4-5.)  Emergency

---
[1] The Polidoros' Response in Opposition to Westfield's Motion for Partial Summary Judgement does not have page numbers.  Therefore, we will utilize the ECF generated pagination when citing to the Polidoros' Response.

personnel arrived at the scene and transported Polidoro to the hospital. (*Id.* at 5-6.) He testified that he has had neck and head pain since the accident. (*Id.* at 6.)

On October 9, 2013, Polidoro filed his first Workers' Compensation Petition that sought payment for only his medical bills associated with the accident. (*Id.*, Ex. H at 1 (First Workers' Compensation Petition).) The first Workers' Compensation Petition stated that Polidoro was involved in an automobile accident during the course of his work duties and suffered a head injury. (*Id.*) He later testified that although he had head pain after the accident, he was still able to perform his job duties and was working full forty-hour weeks "for the most part." (Def.'s Br. Supp. Mot. Partial Summ. J., Ex. A ("Polidoro Dep.") at 84.)

Polidoro filed a second Workers' Compensation Petition on September 24, 2015 while the first Petition was still pending. (Pl.'s Resp. Opp'n to Def.'s Mot. Partial Summ. J. 9.) In providing a description of the injury, Polidoro stated he had "severe headache disorder[] [and] aggravation of post traumatic migraines/concussion syndrome." (*Id.*, Ex. A (Second Workers' Compensation Petition) at 1.) He further provided that the date of injury was July 20, 2015 and that it happened via "[r]epetitive extreme forward flexion postures adapted to accomplish work related tasks, repetitive industrial environmental noise and flouroscopic [sic] lighting while in the course and scope of [his] employment." (*Id.*) In connection with his second Petition, Polidoro testified before a Workers' Compensation Judge that he was attributing his increase in headaches to the fluorescent lighting in the work shop, the noise from hammers, and the forward pressure when he needed to lean forward. (Def.'s Br. Supp. Mot. Partial Summ. J., Ex. I at 13.)

On December 28, 2016, the Workers' Compensation Judge denied Polidoro's second Workers' Compensation Petition, finding that Polidoro "failed to establish that he suffered a new injury or an aggravation of his headache condition or concussion syndrome at the workplace as

2

of July 20, 2015."[2] (Pl.'s Resp. Opp'n to Def.'s Mot. Partial Summ. J., Ex. R at 11.) Polidoro appealed the denial to the Workers' Compensation Appeal Board. (Def.'s Br. Supp. Mot. Partial Summ. J. 10.) In his brief in support of his appeal, he claimed that he suffered a traumatic brain injury as a result of a work-related automobile accident in May 2012. (*Id.*) He further stated that he was able to return to work following the motor vehicle accident, "but as of July 2015, continued exposure to industrial lighting and sounds and neck strain on the job significantly aggravated his [symptoms], leaving him unable to keep working." (*Id.*, Ex. L at 1.)

Westfield issued a policy of insurance to Custom Aire that covered the period in which the May 2012 motor vehicle accident occurred. The policy states that Westfield "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle'." (*Id.*, Ex. M ("Policy") at 1.) On September 29, 2017, the Polidoros filed a Complaint against Westfield seeking UIM benefits under the policy.[3] On May 14, 2018, Westfield filed the instant Motion for Partial Summary Judgment that seeks dismissal of Polidoro's claim for past and future wages.[4]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

---

[2] On April 28, 2016, Polidoro executed a Compromise and Release Agreement pertaining to his first Workers' Compensation Petition. (Def.'s Br. Supp. Mot. Partial Summ. J. 9.)

[3] The Polidoros previously filed a state court action against the driver of the van that rear-ended Polidoro's vehicle. The case settled for the applicable insurance policy limits.

[4] Gabriella Polidoro's claim in this action is for loss of consortium.

The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

As noted above, Westfield argues that Polidoro's past and future wage loss claim should be dismissed because there is no genuine dispute of material fact that his inability to work was due to a subsequent aggravation of his condition, which was caused by fluorescent lighting, loud noise, and forward flexion, rather than the May 2012 automobile accident occurring over three

4

years prior. Westfield also claims that to the extent Polidoro argues his inability to work was caused by the motor vehicle accident, such evidence should be precluded under the doctrine of judicial estoppel.

### A. Factual Cause

We begin with whether there is a genuine dispute of material fact as to the cause of Polidoro's inability to work. Under the policy of insurance Westfield issued to Custom Aire, UIM coverage is available when the "'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle'." (Policy at 1.) Similar contractual language has been held to "create[] a derivative form of liability, binding the UIM insurer to the liability of the tortfeasor." *Renner v. Progressive N. Ins. Co.*, No. 12-2570, 2014 WL 1091359, at *3 (E.D. Pa. Mar. 18, 2014) (citing *Willett v. Allstate Ins. Co.*, 359 F. App'x 349, 351 (3d Cir. 2009)). Thus, to recover UIM benefits in this case, Polidoro must prove, among other things, a negligence cause of action against the tortfeasor.

Under Pennsylvania law, a negligence claim consists of (1) a duty; (2) a breach of that duty; (3) a causal relationship between the tortfeasor's negligence and the plaintiff's injuries; and (4) damages. *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n.9 (3d Cir. 2002) (citing *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998)). The causation prong involves both cause in fact and proximate cause. *See Galullo v. Fed. Exp. Corp.*, 937 F. Supp. 392, 394 (E.D. Pa. 1996) (Kelly, J.). As is relevant to the instant matter, "[c]ause in fact, or 'but for' causation, requires proof that the alleged injury would not have occurred but for the negligent conduct of the defendant." *Id.* at 395 (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366 (3d Cir. 1990)). Cause in fact is "a *de minimis* standard . . . under which even the most remote and insignificant

force may be considered the cause of an occurrence." *Id.* (quoting *Herman v. Welland Chem., Ltd.*, 580 F. Supp. 823, 827 (M.D. Pa. 1984)).

Westfield argues that Polidoro's claim for past and future wage loss should be dismissed because there is no dispute that the May 2012 motor vehicle accident did not cause his inability to work. (Def.'s Br. Supp. Mot. Partial Summ. J. 16.) Rather, Westfield contends that Polidoro's inability to work was caused by loud noises, fluorescent lighting, and forward flexion that exacerbated his condition over three years after the accident. (*Id.*) Naturally, Polidoro responds by pointing to evidence in the record showing the exact opposite.

We agree with Polidoro that there are genuine disputes of material fact as to the cause of his inability to work. While Polidoro may have testified in connection with his second Workers' Compensation Petition that his headaches and increase in symptoms in early and mid-2015 were due to the work he was performing (particularly fluorescent lighting, noise, and forward flexion), he also testified at his deposition regarding this case that the increase in his symptoms was related to the May 2012 car accident. (*Id.*, Ex. I at 21-22, 76; Polidoro Dep. at 134-35.) In addition, his treating neurologist, Dr. Randy Rosenberg, opined in a July 14, 2015 letter that Polidoro's injuries never resolved following the accident. (Pl.'s Resp. Opp'n to Def.'s Mot. Partial Summ. J., Ex. B at 1) ("As a consequence of unresolved postconcussion headache, [Polidoro] is unable to perform work related responsibilities and is incapable of completing a 40 hour work week."). Finally, Terri Morris, Ph.D., a Pennsylvania-licensed psychologist who is board certified in neuropsychology, conducted a neuropsychological evaluation of Polidoro and concluded in a July 20, 2017 report that "following the May 29, 2012 motor vehicle accident . . . it is unlikely that Mr. Polidoro will ever return to work as a truck driver." (*Id.*, Ex. E at 9.)

6

In short, there is clearly evidence in the record that Polidoro's symptoms following the May 2012 accident caused his inability to work, resulting in a genuine dispute of material fact on the factual cause prong of a negligence claim.

### B. Judicial Estoppel

In anticipation of Polidoro's obvious response that his inability to work was caused by the May 2012 accident, Westfield claims that such a position and evidence should be precluded under the doctrine of judicial estoppel. Westfield's argument is that Polidoro, in his second Workers' Compensation Petition and later brief submitted to the Workers' Compensation Appeal Board, has taken the position that his inability to work was caused by a new injury that resulted from loud noise, fluorescent lighting, and forward flexion. Westfield claims that Polidoro's position in the workers' compensation proceedings is inconsistent with his position in the instant matter, where he is alleging the motor vehicle accident in May 2012 caused his inability to work.

"Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). For a court to apply judicial estoppel, the following requirements must be met: (1) "the party to be estopped must have taken two positions that are irreconcilably inconsistent"; (2) the party must have "changed his or her position 'in bad faith—i.e., with intent to play fast and loose with the court'"; and (3) the imposition of judicial estoppel must be "'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (citations omitted). Additionally, "in [the Third Circuit,] judicial estoppel is generally

7

not appropriate where the defending party did not convince the District Court [or agency] to accept its earlier position." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (citations omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 743 (2001); *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (citation omitted); *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 559 n.16 (3d Cir. 2002); *Montrose*, 243 F.3d at 784.

In this case, we need not address the elements of judicial estoppel because the Workers' Compensation Judge did not accept or adopt Polidoro's position in the second Workers' Compensation Petition. *See G-I Holdings*, 586 F.3d at 262 (not considering the factors because the party's initial position was never accepted); (*see also* Pl.'s Resp. Opp'n to Def.'s Mot. Partial Summ. J., Ex. R at 11.) In particular, the decision states that "[Polidoro] failed to establish that he suffered a new injury or an aggravation of his headache condition or concussion syndrome at the workplace as of July 20, 2015." (Pl.'s Resp. Opp'n to Def.'s Mot. Partial Summ. J., Ex. R at 11.) Because Polidoro's position was not accepted or adopted in connection with his second Workers' Compensation Petition, judicial estoppel in this proceeding is not appropriate.

## IV. CONCLUSION

Polidoro has established sufficient evidence to create a genuine dispute of material fact that his May 2012 motor vehicle accident caused his inability to work. Further, he is not precluded from maintaining such a position, as we find that judicial estoppel is inapplicable. Therefore, Westfield's Motion for Partial Summary Judgment is denied.

An appropriate Order follows.